**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel J Carlisle,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-23-02678-PHX-KML<br><br>**ORDER** |

Plaintiff Gabriel J. Carlisle seeks review of the Social Security Commissioner's final decision denying him disability benefits. The Administrative Law Judge ("ALJ") committed materially-harmful legal error in evaluating certain medical opinions and Carlisle's symptom testimony, so the Commissioner's decision is vacated and remanded for further administrative proceedings.

**I.  Background**

Carlisle filed an application for disability benefits on June 21, 2021, alleging a disability beginning November 16, 2020. (Administrative Record ("AR") 15.) Carlisle alleged he was unable to work because of medical conditions including borderline personality disorder, major depressive disorder, generalized anxiety disorder, narcolepsy, and obesity. (AR 19.)

Carlisle's claim was denied initially and on reconsideration. (AR 15.) Carlisle then presented his case to an ALJ who found he was not disabled. (AR 27.) The Appeals Council denied Carlisle's request for review. (AR 1.) Carlisle then appealed to this court.

## II. Legal Standard

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. Discussion

Carlisle argues the ALJ committed two materially-harmful legal errors in analyzing his claim: (1) the ALJ rejected the assessment of two of Carlisle's treating mental health providers without providing sufficient explanation; and (2) the ALJ rejected Carlisle's symptom testimony without adequate justification. Carlisle seeks a remand for a calculation of benefits or, in the alternative, for further administrative proceedings.

### A. The ALJ's Five-Step Disability Evaluation Process

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if he cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that his impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the claimant must

show his residual functional capacity ("RFC")—the most he can do with his impairments—precludes him from performing his past work. *Id.* If the claimant meets his burden at step three, he is presumed disabled and the analysis ends. If the inquiry proceeds and the claimant meets his burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Carlisle met his burden at steps one and two. (AR 18–19.) At step three, the ALJ determined Carlisle's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment and that Carlisle had the RFC "to perform a full range of work at all exertional levels but with [some] nonexertional limitations." (AR 19, 21.) The ALJ used this RFC to conclude at step four that Carlisle could not perform his past relevant work in customer service or as an HVAC helper as those occupations are defined in the Dictionary of Occupational Titles ("DOT"). (AR 25–26.) Continuing to step five, the ALJ determined Carlisle could perform "jobs that existed in significant numbers in the national economy," meaning Carlisle was not disabled. (AR 26.) Specifically, the ALJ found Carlisle could work as a housekeeper, dishwasher, and cleanup worker as those jobs are defined in the DOT. (AR 26–27.)

In evaluating Carlisle's RFC, the ALJ considered his entire medical record, but discounted the assessments of two of Carlisle's treating providers—nurse practitioner Sean Elrod and counselor David D.W. Shumway—because he found them unsupported by the treatment records and inconsistent with Carlisle's medical record as a whole. (AR 25.) The ALJ also discounted Carlisle's symptom testimony because it was not consistent with the evidence in the record. (AR 22–24.) Carlisle argues these were harmful legal errors.

### B. The ALJ's Evaluation of Medical Opinions

For claims filed after 2017 like Carlisle's, the most important factors an ALJ considers in evaluating medical opinions are "supportability" and "consistency." *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability" refers to the extent to

which a medical source grounds the opinion in an explanation of the relevant objective medical evidence. *Id.* "Consistency" refers to the extent to which the opinion accords with evidence from other medical and nonmedical sources. *Id.* at 792. An ALJ must describe how he considered the supportability and consistency factors when explaining how persuasive he finds a medical opinion. *Id.* But under the 2017 regulations, an ALJ need no longer give special deference to treating physicians, nor provide "specific and legitimate reasons" for rejecting a treating doctor's opinion. *Id.* Instead, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

Elrod and Shumway "opined [Carlisle had] moderately severe to severe limitations in multiple areas of mental functioning." (AR 25.) The ALJ analyzed their opinions together in one paragraph and found both unpersuasive, stating they were "not supported by the treatment notes" or consistent "with the evidence as a whole."[1] (AR 25.) The ALJ relied on Carlisle's reports of brief and improving symptoms with treatment, the effectiveness of his medications, and his "largely normal" mental status examinations to discount the medical opinions. (AR 25.) Because the records the ALJ cited do not accurately reflect the record as a whole, he erred in rejecting the providers' opinions on that ground.

Carlisle contends the ALJ's "characterization" of his record as being comprised of "'mild complaints of anxiety or depression' that were 'usually brief' and followed with improvement was not an accurate reflection of th[e] record when viewed as a whole." (Doc. 10 at 14 (quoting AR 25).) Indeed, an ALJ is "required . . . to examine th[e] evidence in the broader context of [a claimant's] impairment." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). For example, the Ninth Circuit found an ALJ improperly rejected a claimant's testimony where the ALJ "pointed to several portions of the treatment notes that describe[d]" a claimant as generally happy despite alleging depression and anxiety because

---

[1] The ALJ found some aspects of Elrod and Shumway's treatment notes supported the RFC he assigned Carlisle and additional limitations to jobs with "simple instructions, simple work-like procedures, simple work-related decisions, simple tasks, occasional contact with coworkers and the public, and simple changes." (AR 25.)

- 4 -

"the treatment records must be viewed in the light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ committed the same type of error here.

The ALJ cited some improvements reflected in Carlisle's medical records, but those improvements do not accurately capture the medical records as a whole. Among the most relevant medical records—none of which the ALJ cited—are accounts of Carlisle's psychiatric hospitalization following a suicide attempt by hanging (AR 306, 355) with continued suicidal thoughts afterward within the alleged disability period (AR 566, 695); self-harm through cutting including as recently as three weeks before the hearing (AR 51); rating his depression as a nine out of ten (AR 414); decreased motivation, accompanied by a belief that he did not "have nor deserve people" (AR 548); reporting minimal improvement with medication (AR 500, 505, 510); symptoms of depression with severe low mood (AR 505); strong feelings of self-harm and wishing he were dead (AR 497, 502, 507, 522, 568, 628); and problems with concentration and distractibility (AR 651, 690). These complaints were consistent during the disability period—the same period during which the ALJ concluded Carlisle had improved.

The ALJ erred by relying on some records to support finding Elrod and Shumway's opinions unpersuasive while ignoring the significant records supporting them. *See Attmore*, 827 F.3d at 877 (holding an ALJ must examine evidence "in the broader context [of a claimant's] impairment" and "cannot simply 'pick out a few isolated instances of improvement'") (simplified); *see also Lewis v. Comm'r of Soc. Sec. Admin.*, 625 F. Supp. 3d 942, 949–50 (D. Ariz. 2022) (holding an ALJ erred by failing to consider "a significant piece of medical evidence").) This error is not harmless because it is not clearly "inconsequential to the ultimate nondisability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (simplified).

It is true that when the record evidence "is susceptible to more than one rational interpretation it is the ALJ's conclusion that must be upheld," but that is not the case here. *Burch*, 400 F.3d at 679. The reason the ALJ gave for disregarding Elrod and Shumway's

medical opinions was not rational because it was based on legal error. *See Masters v. Saul*, No. 217-CV-00905-JAD-BNW, 2019 WL 5549229, at *2 (D. Nev. Oct. 28, 2019) (holding it was not rational for the ALJ to disregard symptom testimony and certain medical records).

Had the ALJ not improperly discounted Elrod's opinion, he may have found Carlisle disabled because Elrod opined Carlisle would be "off task greater than 21 percent of an 8-hour workday."[2] (AR 484–85.) The vocational expert at the hearing testified someone with Carlisle's limitations who was off-task greater than 21 percent of an eight-hour workday would be unable to perform any work in the national economy. (*See* AR 54–55.) The court therefore cannot "confidently conclude" this error was "inconsequential to the ultimate nondisability determination" and declines to find it harmless. *Id.*

### C. The ALJ's Evaluation of Carlisle's Symptom Testimony

Carlisle testified at length about his psychiatric symptoms' effects on his ability to sustain full time employment. (*See* AR 42–53.) He described how in the months leading up to his disability onset date in November 2020, his mental health took "a massive downturn" to the point he could barely work and he became "horribly suicidal [and] massively self-harming to the point where [he] had to check [him]self into a psychiatric facility to prevent [him]self from committing suicide." (AR 42–43.) Carlisle "did not improve even after" his stay at the psychiatric facility and left his job after realizing he was "not able to work anymore." (AR 43.) Carlisle described how in a typical day he basically "sit[s] around and pretty much do[es] nothing and then go[es] back to bed at the end of the day." (AR 47.) He does not make himself food, struggles with personal care, and does not do chores, shop for groceries, or go for walks. (AR 47–49.) Carlisle testified to continuing to have "very bad problems with cutting [him]self" and "wish[ing] [he] was dead." (AR 52, 53.)

The ALJ recognized that Carlisle—in his symptom testimony and in the medical

---

[2] The ALJ's findings may also have been different if he had not improperly discounted Shumway's opinion. Shumway opined Carlisle would be off task 16–20 percent of an eight-hour workday. (AR 541.)

- 6 -

records—"report[ed] numerous symptoms including, but not limited to difficulty completing tasks, difficulty focusing, lack of energy, crying spells, difficulty sleeping, nightmares and self-isolation." (AR 25.) But the ALJ ultimately found Carlisle's "reported symptoms" were "not as limiting as [he] alleged." (AR 24.) The ALJ based his reasoning on three key factors: (1) Carlisle's reports that his medications were effective, (2) the inconsistency between his daily activities and his alleged symptoms, and (3) the discrepancy between his alleged symptoms and his "largely normal mental status examinations." (AR 23–24.)

When a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective symptom-severity testimony by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude the ALJ "did not arbitrarily discredit [a] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified), *superseded on other grounds by* 20 C.F.R § 404.1502(a). The ALJ did not find that Carlisle was malingering. So, the ALJ could only discredit his symptom testimony by providing "specific, clear and convincing" reasons for doing so. *Revels*, 874 F.3d at 655

Contradictions between a claimant's symptom testimony and his daily activities provide a valid ground for discounting his symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). But in considering daily activities to discount a claimant's symptom testimony, the ALJ must conduct a "transferability" and "substantiality" analysis. That analysis requires an ALJ to consider whether a claimant can spend a "substantial part" of his day "engaged in pursuits involving the performance of

physical functions that are transferable to a work setting." *Id.* (citation omitted) (emphases added).

Here, the ALJ did not indicate why the daily activities he cited contradicted Carlisle's testimony (*see* AR 23) and did not conduct a transferability or substantiality analysis (*see* AR 23–24). The ALJ listed daily activities Carlisle reported such as watching television, using a computer, and reading as examples of how his "allegations are inconsistent with his own reports of daily functioning." (AR 23.) Likewise, the ALJ mentioned activities Carlisle reported doing occasionally like making sure his grandpa took Alzheimer's medication and driving only to the pharmacy and therapy appointments (AR 48–49)—but failed to link those activities to Carlisle's alleged symptoms. *See Dagley v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01370-PHX-JJT, 2022 WL 343382, at *6 (D. Ariz. Feb. 4, 2022) (noting the court could not meaningfully review the ALJ's daily activities analysis because the ALJ did not tie them to any of the claimant's symptoms). In doing so, the ALJ did not mention what alleged symptom testimony these activities contradict, nor whether any of them took up a "substantial part" of Carlisle's day. (*See* AR 23–24.) The failure to make those findings here was error. *See Molina*, 674 F.3d at 1113.

The Commissioner argues ALJs may rely on daily activities that do not meet the threshold for transferable work skills when they "contradict a claimant's statements about her symptoms," but the single case he relies on is inapposite. (Doc. 14 at 15 (citing *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022).) In *Smartt*, the claimant "repeatedly testified that she had not driven since her neck surgery in 2015" but admitted on a daily activities questionnaire in 2016 "that she routinely drove a car." *Id.* The ALJ pointed to no such contradiction between Carlisle's daily activities and his testimony and the Commissioner does not identify one on appeal. It was therefore legal error for the ALJ to rely on Carlisle's daily activities to discount his symptom testimony. The Commissioner does not argue such an error was harmless and the court is not confident the error was inconsequential to the ALJ's nondisability determination. *See Marsh*, 792 F.3d at 1173.

The ALJ also committed errors in the way he considered the effectiveness of

Carlisle's treatment and purportedly normal cognitive findings in the record as reasons to discount Carlisle's symptom testimony. Crucially, the Ninth Circuit "ha[s] emphasized while discussing mental health issues [that] it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. That is precisely the sort of analysis the ALJ engaged in here. (*See* AR 23–24.) Carlisle's treatment records showed that any improvements he experienced were short-lived. (*See* AR 414, 421, 505, 495, 564.) And the ALJ's reliance on normal cognitive findings are inapposite as they do not relate to Carlisle's psychiatric symptoms and diagnoses. *See Bogner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01908-PHX-DMF, 2023 WL 4734120, at *5 (D. Ariz. July 25, 2023) ("As the Ninth Circuit has stated . . . cognitive functioning is not necessarily inconsistent with allegations of depression and anxiety.") (citing *Ghanim*, 763 F.3d at 1164). The ALJ committed materially-harmful error in his rejection of Carlisle's symptom testimony.

### D. Remand for Reconsideration

The court has discretion to remand a case for additional evidence or for an award of benefits if an ALJ's decision contains harmful error. *McCabe v. Comm'r of Soc. Sec. Admin.,* No. CV-22-00192 PHX DLR (CDB), 2023 WL 3080951, at *31 (D. Ariz. Apr. 4, 2023), *report and recommendation adopted*, No. CV2200192-PHX-DLR-CDB, 2023 WL 3078661 (D. Ariz. Apr. 25, 2023). Carlisle argues his case should be remanded for an award of disability benefits. (Doc. 10 at 24.) The Ninth Circuit has devised a "credit-as-true" standard for an award of benefits where (1) the court asks whether the ALJ "has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) if so, whether the record has been "fully developed" and "further administrative proceedings would serve no useful purpose"; and (3) if "no outstanding issues remain and further proceedings would not be useful," the court may credit the improperly discredited evidence as true and find the claimant disabled on remand. *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1100–01 (9th Cir. 2014) (citing *Garrison*, 759 F.3d at 1020) (internal quotations omitted).

The ALJ failed to provide legally sufficient reasons for rejecting Carlisle's testimony and rejecting the treating providers' medical opinions. The ALJ based his nondisability determination on a step five finding that Carlisle could perform jobs that existed in significant numbers in the national economy. (AR 27.) After reconsidering Elrod and Shumway's medical opinions and Carlisle's symptom testimony, this finding may change. There are thus outstanding issues which would make further proceedings useful and the case is remanded for further administrative proceedings.

Accordingly,

**IT IS ORDERED** vacating the decision of the ALJ and remanding for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of February, 2025.

Honorable Krissa M. Lanham
United States District Judge